In the Matter of VINCENT CIMINELLO, Petitioner, against THOMAS J. CURRAN, as Secretary of State of the State of New York, Respondent.

Supreme Court, Special Term, Erie County, December 29, 1949.

*Nicholas D. Grisanti* for petitioner.

*Nathaniel L. Goldstein, Attorney-General (Michael P. Geraci* of counsel), for respondent.

HAGERTY, J. Pursuant to the provisions of section 443 of the General Business Law and article 78 of the Civil Practice Act, this petitioner seeks a review of the act of the Secretary of State of the State of New York in rejecting his application for a license as a barber, as required by article 28 of the General Business Law.

The underlying facts are not in dispute and they are as follows: The petitioner is sixty-two years old. He has resided in the city of Buffalo since 1912. From 1919 to 1931 he conducted his own barbershop in the city of Buffalo. Then he closed his shop and established a barbering business to the extent of cutting hair for members of the fire department of the city of Buffalo by going from one firehouse to another. He was so engaged from 1931 to the time he applied for a renewal

of his license in July, 1949. Since enactment in 1946 (L. 1946, ch. 801) of article 28 of the General Business Law relating to and regulating the "practice of barbering", the petitioner twice has been licensed by the Secretary of State, originally on October 3, 1947, and again on September 1, 1948. Prior to 1947, the petitioner secured from the city of Buffalo appropriate licenses as they were then required by the ordinances of that municipality.

When the petitioner in July, 1949, applied to the Secretary of State for a renewal of his license as a barber, he furnished the office of that State officer with all the information required for that purpose, including the fact, which he had inserted in his applications in 1947 and 1948, to wit: that he was self-employed and was engaged in going from firehouse to firehouse in the city of Buffalo cutting the hair of the firemen.

Subsequently, and in August, 1949, his application for renewal of his license, together with his tendered license fee, was returned to him with a communication from an assistant director of licenses explaining the decision rejecting his application as follows: "Under question 3 of your application, it is noted that while you state you are self-employed, you have no barber shop. Your attention is called to the fact that every barber operator must be employed by a licensed barber shop owner. We cannot entertain an operator's application from you unless (1) you obtain employment in a licensed barber shop and operate out of that business, or (2) file an application for barber shop owner's license on the enclosed form accompanied by a certified check or money order for $10.00. A careful inspection will have to be made of your premises to ascertain if they meet the physical and sanitary requirements of the barbers' license law."

Subsequent correspondence between the petitioner's attorney and this State official throws light on the status of the petitioner under article 28 of the General Business Law as the office of license director sees it. Under date of September 14, 1949, the assistant director wrote as follows: "The information contained in our letter of August 22 still stands, as itinerant barbering is not permitted under the State Barbers' License Law. I do not know of any reason why Mr. Ciminello cannot operate out of a licensed barber shop and perform his services as a barber in behalf of the firemen of Buffalo at the various fire stations. The manner of his operating as a barber at the present time is absolutely illegal, and we suggest that he apply

for employment with a licensed barber shop owner and we will then be in a position to take favorable action on his application for renewal of his barber's license.''

In an opinion rendered by the Attorney-General on June 15, 1948, relative to the provisions of article 27 of the General Business Law regulating the practice of hairdressing and cosmetology which was enacted at the same time as was article 28, this was said: '' I have considered the circumstance, noted in your letter, that the statute dealing with the practice of barbering specifically prohibits the ' establishment of itinerant shops ', whereas there is no comparable prohibition in connection with beauty shops. I observe, however, that the report of the Legislative Committee, referred to above, in discussing ' itinerant problems ' (p. 16), referred not to treatments in customers' homes, but to temporary shops set up in New York State by persons from other states during certain seasons of the year, which are ' lax periods ' in the home state, such shops being discontinued and the owners departing from this state when the busy period here is ended. The prohibition against itinerant shops in Section 438 (2) is apparently directed to this problem.'' (1948 Atty. Gen. 217, 218.)

The Attorney-General referred to this part of the legislative committee's report at pages 16–17 (N. Y. Legis. Doc., 1946, No. 8):

'' (b) *Itinerant Problems.* A matter of growing concern is the problem of itinerant barbers and beauticians. There was proof at the hearings that due to the lack of a licensing law in this State many persons who cannot meet the requirements of other states come to the State of New York where they do not have to meet any requirements at all. This is particularly true in our large cities and in some areas of our State near its borders. Many unskilled persons are now working as barbers or beauticians in this State. The result is that the public suffers at the hands of inexperienced operators.  *  *  *

'' It is now possible for itinerants to come into our State without much hindrance. These persons establish temporary places of business and move from one part of the State to the other. They come into the State for a short time competing with legitimate business in this State, then leave the State and come back again. They can come back as often as they like under existing law. The committee found that these itinerants set up shops at such times as to reap the benefit of a seasonal increase in business and then leave just as soon as the seasonal

increase subsides. This is particularly harmful to the citizens of this State who carry on their businesses all the year around. It is a matter of common knowledge that there are so-called lax periods in other states. These lax periods do not necessarily coincide with the lax periods in this State. It is now possible for non-residents to leave other states during the lax periods in those states and then return to those states just about the time there is a seasonal increase in those other states. For the most part these itinerants do not own any property or equipment and contribute little or nothing to the tax revenues of this State and at the same time obtain whatever advantages our State affords."

It is easily discernible that the petitioner cannot be placed in the category of itinerant barbers or itinerant barbershop owners contemplated in enacting the statute. Indeed, the assistant director of licenses in his letter of September 14th said, if the petitioner " operate[d] out of a licensed barber shop " he can " perform *his* services as a barber *in behalf of the firemen of Buffalo at the various fire stations."* (Emphasis supplied.)

Undoubtedly, subdivision 3 of section 439 of the General Business Law is chiefly the basis for the thought that the petitioner as a licensed barber must operate out of a licensed barbershop. It reads as follows: " Each license or certificate issued pursuant to this article shall be posted and kept posted in some conspicuous place in the barber shop in which the licensee or registrant is engaged in the practice of barbering or as an apprentice."

Posting of a license " in some conspicuous place in the barber shop in which the licensee or registrant is engaged in the practice of barbering " serves two purposes: (1) it informs the patrons of a barbershop that it is a duly licensed shop and that the barbers employed therein are duly licensed barbers, and (2) it establishes a place where a licensed barber is available for inspection of himself and his equipment.

However, if this petitioner whose only means of a livelihood is the practice of barbering in which he has been engaged practically all his life, cannot post his license in a barbershop because he is not engaged in the practice of barbering therein, he is thereby deprived of his only means of a livelihood. On the other hand, if he is compelled to post his license in a barbershop and then carries on his trade by going from firehouse to firehouse in the city of Buffalo cutting firemen's hair, he is being compelled by the State to resort to a subterfuge which thwarts

the very purposes intended to be served by the posting of his license in a barbershop. His patrons in the firehouses will never know whether he is a duly licensed barber under the laws of the State of New York due to the fact that his license may be posted in a barbershop far distant from the firehouses that he visits, and he will not be available at the barbershop where his license is posted for inspection by the State of his person and equipment.

Certainly it should not be said that the law intends or encourages resort to subterfuge as a means of proving apparent compliance with the law.

The constitutionality of article 28 of the General Business Law or its various provisions is not seriously questioned in this proceeding. The point that is raised is whether the acts of the respondent in respect to the application of the petitioner under the peculiar and unusual circumstances of his case are not unreasonable.

The petitioner is almost a lifelong resident of the city of Buffalo who has always complied with the ordinances of the city of Buffalo and the laws of the State of New York in plying his trade. His qualifications are not in question. No objection is raised in regard to his physical condition nor is any claim made that he has breached any sanitary requirements. His activities as a " firehouse barber " are not in violation of the letter or spirit of the law. He is not a fly-by-night but rather has a home where his license and equipment are when he is not actually engaged in the work of his trade.

The decision of the respondent in respect to the petitioner's application for a barber's license is annulled and he is directed to issue the license applied for by the petitioner.

Submit order.